## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

--------------------------------------------------------------------- x
GREY WALL SOFTWARE, LLC  :
and VEOCI INC.,  :
   :  3:22-cv-00203
               Plaintiffs,  :
   :
       v.  :
   :
AEROSIMPLE LLC and  :
VISWESWARA RAO VISWANADHA  :
a/k/a VISWESWARA VISWANADHA RAO  :
a/k/a VISHU RAO,  :
   :
              Defendants.  :
--------------------------------------------------------------------- x    February 3, 2022

### VERIFIED COMPLAINT

Plaintiffs Grey Wall Software, LLC ("Grey Wall") and Veoci Inc. (together with Grey Wall, "Veoci" or "Plaintiffs" or "Company") as and for their Verified Complaint against Defendant AeroSimple LLC ("AeroSimple") and Defendant Visweswara Rao Viswanadha a/k/a Visweswara Viswanadha Rao a/k/a Vishu Rao ("Rao," "Vishu Rao" or "Vishu" and, collectively with AeroSimple, "Defendants") allege as follows:

### GENERAL ALLEGATIONS

1.     Plaintiff Veoci is a software development company and service provider specializing in digitizing comprehensive aviation requirements and protocols for airports, including as mandated by the Federal Aviation Administration ("FAA"), transferring paper processes to a digital solutions platform through its proprietary Airport Digital Solutions Software suite built on the Company's proprietary no-code application builder with end-user

customization to manage all aspects of daily airport operations.  Veoci's no-code builder functionality empowers the rapid development of software, tailored to an airport's existing forms and protocols, for immediate deployment, execution and customer use.  In reducing the "coding" that traditional software development requires by as much as 95%, Veoci can easily create new software and enhancements with extraordinary speed, distinguishing itself from competitors and establishing the Company as the dominant product supplier in the airport digitized solutions market.

2.      Veoci's proprietary Airport Digital Solutions Software suite integrates oversight for daily operations including safety, security and regulatory compliance, including, but not limited to:  airfield inspections, wildlife hazard management (animal control with respect to air and field management and in-flight bird strikes), work orders tailored to reactive and preventative maintenance tied to asset management of ground painted markings, field signage, lighting, pavement conditions (*i.e.*, potholes and cracking) and safety areas used by firefight personnel.

VEOCI'S ENTRY INTO THE AIRPORT DIGITAL SOLUTIONS MARKET

3.      Veoci's pioneering entry into the airport digital solutions market began in August 2011 when the Company met with the airport director of Tweed New Haven Airport located in New Haven, Connecticut ("Tweed Airport").  Subsequently, the Company conducted onsite interviews with the manager of airport operations and other airport personnel.  Veoci concluded that airport operations provided a tremendous business opportunity for Veoci's digitized no-code software platform.  Highly regulated and subject to strict FAA oversight, airports have historically relied on manual, paper-based record keeping for all aspects of

compliance, safety and security. This paper-based method led to inaccurate reporting, extensive time to locate and accurately present required information to the FAA and disorganization with inspection and repair task completion. The Veoci no-code platform appeared ideally suited to develop a comprehensive Airport Digital Solutions Software product.

4.      In digitizing all aspects of Tweed Airport's daily operations, Veoci committed a major investment of time, resources and personnel to create multiple comprehensive databases that cross-reference each other, and thereby integrate all aspects of task and inspection reporting into a cloud-based software system. Airport personnel log every task into the system through customized computer data entry forms. Data entry can be done by desktop, laptop, tablet and even by cell phone.

5.      Based on the Tweed Airport initial project, Veoci made the decision to enter the airport digital solutions market.

6.      In December 2012, Veoci hired Defendant Rao as a part of the engineering solutions team to advance development and expansion of airport applications and solutions based on the Veoci no-code platform. Veoci's co-founder, president and CEO, Dr. Sukh Grewal, knew Rao who served as a consultant during Dr. Grewal's prior employment at General Electric Company ("GE") in Fairfield, Connecticut.

7.      Prior to joining Veoci in December 2012, Rao had no background or experience in aviation or airport operations. Veoci hired Rao because he had experience in digitizing manual paper records to a software platform.

8.      Defendant Rao signed an employment contract with the Company ("Employment Contract"), a true and correct copy of which is annexed hereto as Exhibit A. The

Company assigned Rao to oversee Veoci's Airport Digital Solutions Software business.

9.      In conjunction with his Employment Contract, Rao was required to sign, and did sign, Veoci's Confidentiality, Proprietary Information and Non-Competition Agreement ("Confidentiality Agreement"), a true and correct copy of which is annexed hereto as EXHIBIT B. In the Confidentiality Agreement Rao agreed, among other things:  (i) not to disclose Company confidential or proprietary information, either during or after his employment with Veoci; (ii) to assign all right, title and interest in inventions and ideas, patentable or not, to the Company; and (iii) to return all information, whether stored in documents, electronically or otherwise, including confidential information, trade secrets or intellectual property belonging to the Company upon the conclusion of his employment with Veoci.  *See* EXHIBIT B.

10.      After implementation of the initial project at Tweed Airport, Veoci's Digital Airport Solutions Software quickly expanded on its no-code platform.  The Digital Airport Solutions Software team similarly grew with increasing sales and customers.  By 2018, Veoci's Airport Digital Solutions Software was in use at more than 50 airports.  The Company's no-code application builder with end-user customization evolved to become a major selling feature, and was extremely well-received in the airport digital solutions market.  Several airport customers chose Veoci because the Company's no-code application builder with end-user customization empowered customers to collaborate with Veoci in developing additional applications on their own or in consultation with Veoci.

11.      All Veoci customers sign confidentiality and proprietary rights agreements to protect Plaintiffs' intellectual property, trade secrets and developed ideas and concepts. The confidentiality and proprietary rights provisions are contained in the Company's Master

Services Agreement, a true and correct copy of which is annexed hereto as EXHIBIT C.

12.     In late summer of 2018, Rao informed Veoci that he was leaving his employ with the Company, returning to the Republic of India.  At the time of his departure on November 1, 2018, Rao held the title of General Manager and directed a substantial support team reporting to him to enhance, implement and deploy the Company's Airport Digital Solutions Software business for existing clients and prospective clients.

**Veoci's Discovery of Defendants' Theft of its Trade Secrets and Confidential Information**

13.     In or about October or November 2021 the City of Dallas, Texas issued a Request for Proposal ("RFP") for digital-based solutions to enhance airport operations at Dallas Love Airfield.  Veoci submitted a bid for the project on November 19, 2021. Defendant AeroSimple, a company then unknown to Veoci, made a competing bid.  Plaintiffs were astounded to find out that Defendant Rao was the founder of Defendant AeroSimple and, with intimate knowledge of Veoci's confidential pricing structure and proprietary software, significantly underbid the Dallas RFP in an attempt to secure the contract.

14.     Pricing aside, the AeroSimple product for airport operations, as evidenced by the City of Dallas' evaluation of the AeroSimple bid, met the RFP requirements in a manner disturbingly similar to the Veoci Airport Digital Solutions Software Suite built on the Veoci no-code application builder with end-user customization that was painstakingly developed over the course of years by Veoci.  Defendants' website in fact confirms copy and use of Veoci's no-code platform.  *See* EXHIBIT P ("**95%** of our customers say that they have been looking for a software that *they can customize on their own without reaching out to the product support*.") (emphasis supplied in italics).

15.    Defendant Rao misappropriated Veoci's trade secrets and proprietary confidential information to which he had full access during his 6-year tenure overseeing Veoci's Airport Digital Solutions Software development and implementation, including in his capacity as General Manager of the Company's Airport Digital Solutions Software team.  In doing so Rao avoided all expenses and risks associated with research, design and other costs related to developing an airport digital solutions product by incorporating the stolen Veoci trade secrets to which he had full access, including as General Manager of Veoci's Airport Digital Solutions Software business.

16.    Defendant Rao and Defendant AeroSimple, through founder and alter ego Rao, have engaged in, and continue to engage in, actionable conduct to the ongoing detriment of Plaintiffs in violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*), the Connecticut Uniform Trade Secrets Act ("CUTSA") (Conn. Gen. Stat. § 35-50 *et seq.*), the Connecticut Unfair Trade Practices Act ("CUTPA") (Conn. Gen. Stat. § 42-110b *et seq.*), tortious interference with Plaintiffs' existing contractual relations and business expectancies, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiffs seek money damages, disgorgement of benefits unjustly received by Defendant AeroSimple, attorneys' fees and costs, punitive damages and injunctive relief, including as provided for by 18 U.S.C. § 1836(b)(3)(A) and Conn. Gen. Stat. § 35-52.

**THE PARTIES**

17.    Plaintiff Grey Wall is a limited liability company organized under the laws of the State of Delaware, registered to do business in the State of Connecticut with a principal place of business located at 129 Church Street, 14th Floor, New Haven, Connecticut 06510.  Dr. Grewal is

co-founder and CEO of Plaintiff Grey Wall.

18.     Plaintiff Veoci Inc. is a corporation organized under the laws of the State of

Delaware, registered to do business in the State of Connecticut with a principal place of

business located at 129 Church Street, 14th Floor, New Haven, Connecticut 06510.  Veoci Inc. is

wholly owned by Grey Wall.  Dr. Grewal is co-founder and president of Plaintiff Veoci Inc.

19.     Defendant AeroSimple is a limited liability company organized under the laws of

the State of Wyoming, with a published mailing address at 315 Front Street, Suite 11, New

Haven Connecticut 06513 and a registered agent for service of process in Wyoming.

20.     Defendant Rao is a citizen of the Republic of India who, as founder, CEO and

alter ego of AeroSimple, maintains a published mailing address at 315 Front Street, Suite 11,

New Haven, Connecticut 06513 and, also as the alter ego of AeroSimple, a registered agent for

service of process in Wyoming.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. §

1331 and 18 U.S.C. § 1836(c) which provides that this Court has original jurisdiction pursuant to

the DTSA, including by reason that Defendants engage in interstate commerce.

22.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28

U.S.C. § 1367 in that such claims are so related to claims in this civil action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

23.     This Court has personal jurisdiction over Defendants pursuant to CONN. GEN. STAT.

§ 52-59b in that:

a.      Defendant Rao transacted business in Connecticut during his 6-year employment in the State at Veoci's principal office pursuant to the Employment Contract and Confidentiality Agreement, such conduct also being attributable to Defendant AeroSimple as the alter ego corporate entity formed by Rao; all claims of the Complaint arise out of Defendants' transaction of business in Connecticut.  *See* CONN. GEN. STAT. § 52-59b(1);

b.      Defendant AeroSimple transacts business in Connecticut with a published mailing address in the State, such conduct also being attributable to Defendant Rao as the alter ego of AeroSimple as the business entity formed by Rao; Defendant Rao separately transacts business in Connecticut as co-founder of Cloud Guru LLC d/b/a Cloud IT Guru, a limited liability company organized under the laws of the State of Connecticut, with a published mailing and principal place of business address in Connecticut, targeting and engaging in business transactions with citizens in Connecticut, such conduct also being attributable to Defendant AeroSimple as the alter ego corporate entity formed by Rao.  *See* CONN. GEN. STAT. § 52-59b(1);

c.      Defendant Rao committed tortious acts in Connecticut causing direct injury to Plaintiffs in Connecticut where the theft and misappropriation of Veoci's trade secrets and proprietary business information occurred (actionable conduct under the DTSA, independent of improper use and disclosure), such conduct also being attributable to Defendant AeroSimple as the alter ego corporate entity formed by Rao; all claims of the Complaint arise out of Defendants' tortious conduct in Connecticut.  *See* CONN. GEN. STAT. § 52-59b(2);

d.      Defendants committed tortious acts outside Connecticut causing direct injury to Plaintiffs and the Company's property in Connecticut where, among other things,

Defendants specifically targeted contracts negotiated and performed in Connecticut containing Connecticut choice of law provisions and with malicious intent continue to interfere with Plaintiffs' existing contractual relations that Defendants expected, or should have reasonably expected, to have consequences in the State and deriving substantial revenue from interstate or international commerce; all claims of the Complaint arise out of Defendants' tortious conduct. *See* CONN. GEN. STAT. § 52-59b(3); and

       e.    Defendant Rao's use of a computer and/or computer network in Connecticut during his 6-year employment in the State at Veoci's principal office pursuant to the Employment Contract and Confidentiality Agreement, such conduct also being attributable to Defendant AeroSimple as the alter ego corporate entity formed by Rao; all claims of the Complaint arise out of such computer and/or computer network use in Connecticut. *See* CONN. GEN. STAT. § 52-59b(5).

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims of the Complaint occurred in this District and a substantial part of the property that is subject to this action is situated in this District.

### FACTUAL ALLEGATIONS

25.    Dr. Grewal, along with other colleagues, organized Grey Wall in January of 2011.

26.    Grey Wall, and later with Veoci Inc., developed its proprietary and confidential Airport Digital Solution Software suite on the Company's no-code application builder with end-user customization having several commercial applications.

27.    Veoci's first commercial solution on the Company's proprietary no-code application builder with end-user customization was a digital platform tailored to emergency

management operations. Municipalities and other governmental agencies at the state and county level historically maintain a physical emergency management operations room during times of crisis such as hurricanes, tornados, floods, extreme winter weather events and massive power outages. Municipal team leaders are typically assigned to liaise with a broad spectrum of emergency management resources:  police, firefighters, ambulatory resources, first responders, hospitals, emergency work crews, venues for public dissemination of essential information, coordination with national guard deployments and the Federal Emergency Management Agency, among others.

28.    With regard to such emergency management operations, Veoci's software application digitizes all aspects of emergency management required functionality, and through a cloud-based database provides immediate access to all aspects of deployed emergency management resources, facilitating communications, tracking up to the minute information and status as reported by each provider in the field and allowing end-users to access and share all such data as authorized.

29.    Tweed Airport is owned by the City of New Haven.  Dr. Grewal, knowing that airports operate under strict regulatory guidelines, principally overseen by the FAA, considered airport compliance, safety and inspection responsibilities ideal for Veoci's unique no-code application builder with end-user customization that had been successfully used by emergency management operations.

30.    The Veoci team discovered that *all* of Tweed Airport's daily operations depended on paper-based forms, manually filled out – often with nothing more than handwritten notes – with respect to the FAA's template for daily airport operations requirements and inspections,

*see* 14 CFR Part 139 ("FAR Part 139" or "Part 139"), including:

    a.   tarmac and pavement integrity (*i.e.*, potholes, compromised surfaces, foreign object debris or "FOD");

    b.   runway lighting, signage, markings and clearly designated areas for safety, access, storage and other facilities;

    c.   ground vehicle operations; wildlife hazard management for the presence of wildlife, including strike reporting;

    d.   traffic and wind direction indicators;

    e.   work orders for repairs, recording confirmation of repair completion;

    f.   aircraft rescue and firefighting personnel training records, equipment checks and protective clothing inspections for operation, condition and availability; and

    g.   fuel farm and mobile fuelers, inventories and protocols.

31.    The initial phase for Veoci's entry into the airport digital solutions market first required the arduous task of digitizing all paper forms, records and inspection reports generated by Tweed Airport.

32.    To advance this initial stage, Veoci hired Defendant Rao for the reasons set forth, *supra*.

33.    Rao signed his Employment Contract with the Company on December 3, 2012. *See* Exhibit A at 2.  According to its terms, the offer of employment provided, "You will start in a full-time positionas a Director of Aviation and University Solutions and will assume the responsibilities of that position and other related duties as may be assigned to you from time to

time." *Id.* at 1.  As part of his compensation, Defendant Rao was eligible to receive shares of Grey Wall, which vested. Rao currently has approximately a 2% ownership interest in the Company. *Id.* at ¶ 3.  The Employment Contract provides further:

> **CONFIDENTIALITY, PROPRIETARY INFORMATION AND NON-COMPETITION AGREEMENT**. Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's enclosed standard Confidentiality, Proprietary Information and Non-Competition Agreement.

*Id.* at 1.

34.    The Confidentiality Agreement which has been described, *supra*, and which was also signed by Defendant Rao provides:

> I understand that I have a confidential relationship with the Company and may have access to confidential and proprietary information and records of the Company as well as its subsidiaries, its investors, its corporate partners, its vendors and its customers (collectively its "Affiliates"). I recognize that an unauthorized disclosure or use of confidential or proprietary information could cause damage to the Company or its Affiliates. *Therefore, in consideration of my employment or my being engaged as a consultant, or continued employment or engagement by the Company, I agree to hold in confidence and not to disclose or use, or authorize anyone else to disclose or use, any confidential or proprietary information of the Company or its Affiliates at any time either during or after the term of my employment or engagement, without the express consent of the Company or, in the case of information of its Affiliates, without the express consent of both the Company and the Affiliate concerned.*

EXHIBIT B at 1 (emphasis supplied).

35.    The Confidentiality Agreement further provides:

> For purposes of this agreement, confidential and proprietary information shall be deemed to include any information, knowledge, records, data or trade secrets of the Company (whether or not reduced to written, electronic, magnetic or other tangible form) coming into my possession, or which I have learned, or to which I have access, or which I may discover or develop as a result of my employment (whether full-time, part-time, as an

independent contractor or as a consultant) by the Company. The identity of
the Company's Affiliates and their interests and plans also shall be deemed
to be confidential and proprietary information.

*Id.*

36.    In addition, as set forth in the Confidentiality Agreement, Rao: (i) assigned to

Veoci all right, title and interest in any inventions or ideas conceived or reduced to practice by

Rao during employment; (ii) promised to return to Veoci all materials containing or disclosing

confidential or proprietary information of the Company, and not retain any such material; and

(iii) agreed to indemnify and hold harmless Veoci against any loss, damage, liability or expense

arising from breach, acknowledging that "were I to breach the provisions of this agreement, the

damages to the Company would be irreparable," specifically agreeing further, "in addition to

any appropriate monetary remedy, the Company shall be entitled to enjoin any such breach

in any competent court."  EXHIBIT B at 1-2.

37.    From the commencement of his employment until his leaving Veoci's employ in

November 2018, Rao oversaw the Veoci team's development, deployment and expansion of

the Company's Airport Digital Solutions Software business, first as Director of Solutions and

then as General Manager.  During his 6-year tenure, Rao and his team tailored, refined and

enhanced Veoci's proprietary and confidential no-code application builder with end-user

customization for airport operations.

38.    Veoci currently services more than 100 aviation clients worldwide.  Veoci's

Airport Digital Solutions Software built on the Company's no-code application builder with end-

user customization is unique, is not in the public domain and has not been reversed engineered

or otherwise replicated by independent means. It derives independent economic value from

not being generally known to, and is not readily ascertainable through proper means by

another person who can obtain economic value for disclosure or use of the information.

39.    Veoci actively maintains protocols to keep its Airport Digital Solutions Software

built on the Company's proprietary no-code software application confidential, including

through confidentiality agreements that all employees, consultants and clients are required to

sign prior to obtaining access.  *See* Exhibit B and Exhibit C.

40.    Moreover, Veoci extensively redacts submissions in response to RFP airport

contract opportunities to maintain confidentiality.  *See* Exhibit D.    Each redaction in the

submission must be justified by the Company which is required to set forth the reasons and

bases for each redaction.  *See* Exhibit E.    Many times, the airport issuing the RFP will pass

Veoci's reasons and bases for each redaction to a governmental authority, oftentimes the state

Attorney General's Office in the relevant jurisdiction, which then responds with an opinion as to

whether the requested trade secret status and confidentiality redactions are supportable and

appropriate for redaction.  *See* Exhibit F.

41.    Standard office protocols require all Veoci employees to close laptops when

unattended to prevent others onsite without clearance from gaining access to Veoci's

protected information and trade secrets.  Veoci convenes weekly meetings of its Solutions

Engineers to share reports, new developments, enhancements, *etc*.; at each meeting all

involved are reminded that information shared is confidential Company information and

appropriate steps should be maintained to protect such confidentiality.  Veoci also conducts an

annual cyber-security presentation to remind, reinforce, update and alert employees on how to

apply best practices to maintain secrecy and prevent both inadvertent disclosure and calculated

espionage attacks.

42.    Veoci distinguishes itself from competitors in the airport digital solutions market because the Company's no-code application builder functionality allows it to tailor task-based digital interfaces to an airport's existing forms and protocols rapidly for execution with as much as a 95% reduction in the "coding" effort that traditional software development requires.  As such, the Veoci product begins with the customer's existing practices and procedures, and Veoci then customizes its digital platforms so that each platform mimics what is already known and familiar to a particular airport's personnel.  Migrating from paper to digital input is thereby both comprehensive as to a particular airport's daily operations management and user-friendly to all airport end-user personnel.  There is no need for an airport to adapt to pre-set standardized digital platforms; Veoci replicates all paper-based tasks and record keeping so that end-user digital inputs are in a form and format identical to an airport's pre-migration paper processes.

43.    Veoci's no-code application builder with end-user customization capability also empowers an airport's own IT department and trained administrators to create additional task-based applications and integrate them into the existing product without the need for additional "coding".  The possibilities are unlimited; applicable to both airside and landside operations, and to any size airport, regardless of regulation.  For example, an airport may choose to add on an application that monitors traffic patterns in and around the airport facility or track short-term and long- term parking use, whether the airport services small general aviation or acts in the capacity as a large hub.

44.    All information collected by daily digital inputting is maintained in databases

hosted by Veoci in a cloud-based application to which the customer has full access.  With a few keystrokes, customers can create a report tailored to address a specific problem.  For example, if there are wildlife sightings on one side of a particular runway, the client can pull a data report for all wildlife sightings in that particular area for the past year.  If there is a trend indicating increased animal activity, resources can be allocated accordingly to address the situation.

45.     Besides Veoci and, upon information and belief, Defendant AeroSimple, all known competitors in the airport digital solutions market only provide "out of the box" digital applications.  Such products are code-based, with standardized digital platforms patterned off of the FAR's Part 139 AC-5100-18C inspection template for airport operations.  Airports must adapt to and adopt the supplier's standardized digital platforms.  Any need to alter the provider's platform for a particular inspection function or add an additional functionality requires code-based software engineering by the provider, all at significant additional cost to the customer.  Database records are typically only accessible through the provider, so requests for a particularized report may take days and thereby add additional cost to the customer.  Moreover, competing software suppliers do not provide clients with the ability to build their own additional task-based applications.

46.     Within the context of this market dynamic, Veoci submitted its bid in response to the Dallas RFP for airport safety and work-order management systems to be implemented at Dallas Love Airfield.  Upon review of the submitted bids, Dallas issued its scoring summary for both active and eliminated submissions.  The Dallas scoring summary revealed that one of the submitted bids came from Defendant AeroSimple.  It was then that Veoci learned that its former employee, Defendant Rao, was the founder and CEO of AeroSimple.  A true and correct

copy of the Dallas scoring summary is annexed hereto as Exhibit G.

47.    Defendants' premeditated misappropriation of Veoci's trade secrets and confidential information, and with intimate knowledge of Veoci's pricing structure, have resulted in said Defendants engaging in unfair and actionable trade practices to the direct harm of Plaintiffs in the market.

48.    Upon investigation to date, Veoci has confirmed:

a.    months prior to leaving Veoci, Rao purchased the AeroSimple domain;[1]

b.    prior to his departure, Rao's documentation of requested product "enhancements" tailored to Veoci's airport business client needs slowed dramatically, clearly with the intent of absconding with the enhancement requests with the purpose of folding in enhancements at AeroSimple to make the misappropriated product design more attractive to Veoci's existing clients;

c.    Rao's direct contacts with existing Veoci customers, known to Rao only by reason of his prior employment at Veoci, constitutes continuing tortious interference with Veoci's business relationships;

d.    Discovery of an email received prior to his departure from Veoci from a German company expressing an interest to partner with Veoci, which Rao forwarded to his own personal email and never advised Veoci's management of the potential business opportunity;[2]

---

[1]    *See* Exhibit H annexed hereto.
[2]    *See* Exhibit I annexed hereto.

      e.  Upon departing from Veoci, Rao returned a company laptop; the laptop

         was wiped clean of all data, files, emails, *etc*.

49.    Several existing customers have alerted Veoci that Defendant Rao has contacted them, specifically asking for an opportunity to show them "his" new airport digital solutions product which he claims to be superior to the Veoci product those customers are currently using.

50.    Defendant also interfered with Veoci's existing contractual relationship with San Francisco International Airport ("SFO").  Ms. Dia Wynn joined Veoci in February 2021, but prior thereto held the role of Airport Operations Manager and Airfield Operations Supervisor while working at SFO for over twenty years.  While at SFO, Ms. Wynn knew Defendant Rao in his capacity as General Manager of Veoci's Airport Digital Solutions Software business.  SFO became a Veoci customer during her tenure at SFO.  Ms. Wynn and Rao communicated on a regular basis and exchanged personal cell phone numbers when Rao announced he was leaving Veoci in November of 2018 to return to India.

51.    On February 22, 2021 Defendant Rao contacted Ms. Wynn by text to Ms. Wynn's personal cell phone, clearly believing that Ms. Wynn was still at SFO:

      VR:    Hi Dia.  Good evening.  How are you doing? This is Vishu.
               . . .
      DW:   Are you back with Veoci?

      VR:    No. I started my own company called Aerosimple.  Took 2
             years to develop the software and we already have 10
             customers.

      DW:   Congratulations that is fabulous! Sounds like aviation! I'm
             sure Veoci isn't too happy!

      VR:    Haha. Thanks.  They are not.  But I waited through my

> noncompete period. I am going head to head with them on a
> few RFPs. 😊
> . . .
> When you have some time, I would love to show you
> what we built.
> . . .
> I'll email you a link so you can pick a time based
> on your availability.

> DW:    That sounds great.

A true and correct copy of the February 22, 2021 text is attached hereto as EXHIBIT J.

52.    Notwithstanding his 1-year non-compete, Defendant Rao acted and continues to

act in flagrant disregard of his obligations pursuant to the terms of the Confidentiality

Agreement by misappropriating Veoci's trade secrets and confidential proprietary information.

*See* EXHIBIT B at 1 ("The identity of the Company's [customers] and their interests and plans also

shall be deemed to be confidential and proprietary information.").  Further, Rao used Veoci's

trade secrets to replicate the Company's Airport Digital Solutions Software for Defendants' own

benefit to the detriment of Veoci while still employed by Veoci.  Although Rao oversaw Veoci's

Airport Digital Solutions Software development, it was a group effort with a significant team of

Solutions Engineers.  Rao not only stole trade secrets and confidential proprietary information

that he assigned and never owned, but all trade secrets and proprietary information developed

for Veoci's Airport Digital Solutions Software after countless hours of effort and dedication by

the Company's Solutions Engineers.

53.    Defendant Rao lists the United States as his location in his LinkedIn Bio, a true

and correct copy of which is annexed hereto as EXHIBIT K.  According to his LinkedIn Bio, Rao is

"Founder and CEO" of Defendant AeroSimple, a company he describes as:

> Documenting daily airfield inspections and other regulatory paperwork

on pen and paper as part of an Airport's Part 139 Certification can be very inefficient and time consuming. The manual process also creates a disconnect between the airport management and the airport operations staff over the lack of visibility in the process. Many FAA inspectors have struggled and complained about the illegible handwriting and penalized the airport staff.

*Over the past 15 years, we've helped over 100 airports of all sizes excel in their annual FAA Part 139 inspections. In fact, Aerosimple ensures that all the FAA mandated checklists are followed so you never have to worry about failing an inspection.*

We specialize in converting manual paper based processes associated with daily airfield inspections into an efficient online platform. Aerosimple's online platform provides a common operating picture for all the key stakeholders at the airport.

*Id.* (emphasis supplied).  In fact, AeroSimple did not exist until November of 2019.  Therefore, Defendant AeroSimple has existed for 2 years and not 15 years as stated in his LinkedIn Bio. *See* Exhibit L annexed hereto.

54.    Rao's statement, "Over the past 15 years we've [*i.e.*, he and AeroSimple] helped over 100 airports of all sizes excel in their annual FAA Part 139 inspections . . . .  in converting manual paper-based processes associated with daily airfield inspections into an efficient online platform," *see* Exhibit K, is an outright admission that Defendants are using trade secrets that Defendants misappropriated from Veoci during Rao's employment at the Company's Connecticut office.

55.    Rao's LinkedIn Bio also lists him as co-founder of Cloud IT Guru from "2011 – Present" in which he states, "I founded Cloud IT Guru with my wife." *See* Exhibit K.  Cloud IT Guru LLC ("Cloud IT"), a limited liability company organized under the laws of the State of Connecticut in 2011, dissolved in 2013.  *See* Exhibit M attached hereto.  Cloud Guru LLC ("Cloud Guru") is a limited liability company organized under the laws of the State of Connecticut in

2015.  *See* Exhibit N attached hereto.  Cloud Guru remains active, doing business as Cloud IT

Guru with a website address at www.clouditguru.com.

56.    According to Cloud Guru's website:

WE ARE LOCAL

We are based in New Haven, CT. So no more frustrations with
communicating your vision and ideas with someone you never met.
You can meet our experts in-person and work closely with them.

*Id.*

57.    Also, according to Cloud Guru's website:

a.    the "ABOUT US" page lists Vanessa Noronha (Defendant Rao's wife) as co-

founder with Defendant Rao, and Ashley McMohan as copywriter;

b.    the ABOUT US page lists no other team members;

c.    the "CONTACT" page provides a business address of 315 Front Street, New

Haven, Connecticut 06513;

d.    the "SUCCESS STORIES" page advertises -

i.    "A local dental practice saw a 30% increase in new patients every

monthby coming up on the first page of Google;"

ii.    "A local fitness center signed up 500 memberships within 6 weeks of

opening;" and

iii.    "A local contractor got paid 50% faster by digitizing their proposals and

invoices."

e.    The "PORTFOLIO" page lists AeroSimple as the first example of the

company's website design, with a click through to AeroSimple's website.

A true and correct copy of excerpts from the Cloud IT Guru website is annexed hereto as

EXHIBIT O.

58.     According to the Office of the Connecticut Secretary of State, Cloud Guru:

  a. lists its business and mailing address as 315 Front Street, New Haven, CT

  06513;

  b. lists Vanessa Noronha as principal with a mailing address at 315 Front

  Street, New Haven, CT  06513;

  c. lists Vanessa Noronha as agent with a mailing address and residence

  address at 315 Front Street, New Haven, CT  06513.

*See* EXHIBIT N.

59.     According to AeroSimple's website, www.aerosimple.com:

  a. the HOME page reads "**Airport Operations Software**. Streamline, Simplify

  and Succeed with an all-in-one integrated platform;"

  b. The HOME page represents "**95%** of our customers say that they have been

  looking for a software that *they can customize on their own without*

  *reaching out to the product support*" (emphasis supplied in italics);

  c. The ABOUT page represents "**150+** airports worldwide that we support;"

  d. The ABOUT page lists Defendant Rao as "Co-Founder, CEO;"

  e. The ABOUT page lists Defendant Rao's wife, Vanessa Noronha, as "Director

  of Marketing;" and

  f. The CONTACT page invites site visitors to "Feel free to reach out to us with

  any questions" and lists a mailing address:  Aerosimple LLC, 315 Front Street,

  Ste 11, New Haven, Connecticut 06513.

A true and correct copy of excerpts from the AeroSimple website is annexed hereto as EXHIBIT P.

60.    Defendant Rao, in a manner clearly premeditated while still employed by the Company in Connecticut, misappropriated Veoci's protected confidential and proprietary trade secrets, principally, but not solely, through theft of Veoci's Airport Digital Solutions Software Suite built on the Company's proprietary no-code application builder with end-user customization, thereafter migrating from misappropriation to unauthorized use and disclosure through Rao's alter ego business entity, Defendant AeroSimple.

61.    No other competitor in the airport solutions market has independently created or reversed engineered Veoci's Airport Digital Solutions Software suite built on the Company's proprietary no-code application builder with end-user customization.

62.    Defendants' actionable misappropriation and unauthorized use also includes, but is not limited to: (i) customer lists with confidential customer information such as customer needs, preferences, historical data, product enhancements and anticipated additional client service needs; and (ii) proprietary pricing models developed over the course of securing and maintaining contracts for airports through RFP procedures and otherwise for Veoci, thereby rendering an unfair and impermissible advantage to Defendants in the relevant market.

63.    Defendants' actionable conduct violates federal and state statutory laws pertaining to trade secrets; state statutory law prohibiting unfair commercial trade practices; and related common law claims for tortious interference with contractual relations and business expectancy, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

## COUNT ONE

### (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *ET SEQ.* AS TO ALL DEFENDANTS)

64.    Plaintiffs incorporate by reference each and every allegation set forth in ¶¶ 1-63 as if fully set forth herein.

65.    Plaintiffs are the rightful legal owner with respect to the trade secrets at issue in this civil action, including Plaintiffs': (i) proprietary Airport Digital Solutions Software suite built by a team of engineers employed by the Company over more than seven years on the Company's proprietary no-code application builder with end-user customization to manage all aspects of daily airport operations; (ii) airport customer lists with confidential customer information such as customer needs, preferences, historical data, product enhancements and anticipated additional client service needs; and (iii) proprietary pricing models developed over the course of securing and maintaining contracts through RFP procedures and otherwise for Veoci, thereby rendering an unfair and impermissible advantage to Defendants in the relevant market.

66.    Plaintiffs' trade secrets fall within the DTSA's protection of trade secrets, which encompasses all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

67.    Plaintiffs' trade secret information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through

proper means by, another person who can obtain economic value from the disclosure or use of the information.

68.    Plaintiffs have taken significant effort to keep such information secret, including:

a.    confidentiality agreements that all employees and consultants are required to sign prior to obtaining access, *see* EXHIBIT B;

b.    confidentiality and proprietary rights agreements signed by customers; *see* EXHIBIT C;

c.    extensive redaction of submissions in response to RFP airport contract opportunities to maintain confidentiality, *see* EXHIBIT D;

d.    office protocol requiring all Veoci employees to close laptops when unattended to prevent others onsite without clearance from potential exposure to Veoci's protected information and trade secrets;

e.    weekly meetings of Veoci's Solutions Engineers to share reports, new developments, enhancements, *etc*.; at each meeting all involved are reminded that all information shared is confidential Company information and appropriate steps should be maintained to protect such confidentiality; and

f.    annual cyber-security presentations to remind, reinforce, update and alert employees on how to maintain best practices to maintain secrecy and prevent both inadvertent disclosure and calculated espionage attacks.

69.    Plaintiffs' trade secrets are related to products and services used in interstate and foreign commerce.

70.     Plaintiffs' trade secrets in the airport digital solutions market have never been independently created or reversed engineered, including the Company's no-code application builder.

71.     Defendants misappropriated Plaintiffs' trade secrets by improper means, including theft and breach of a duty to maintain secrecy and non-use.

72.     Defendants are also statutorily liable under the DTSA for misappropriation, disclosure and continuing use of Plaintiffs' trade secrets, knowing that the trade secrets were acquired by improper means in violation of a duty owed to Veoci not to use or disclose Veoci's trade secrets.

73.     Plaintiffs have suffered direct and proximate harm as a result of Defendants' misappropriation, entitling Veoci to: (i) injunctive relief to stop Defendants' misappropriation and misuse of Veoci's trade secrets, including affirmative action to be taken to protect the trade secrets; (ii) damages for actual loss caused by the misappropriation of the trade secrets, including expenses for research, design and other costs Defendants avoided by reason of the misappropriation; (iii) damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss; (iv) exemplary damages in an amount two times of any monetary award, by reason that Defendants maliciously and willfully misappropriated Veoci's trade secrets; and (v) an award of attorneys' fees in an amount to be determined at trial.

## COUNT TWO
### (CONNECTICUT UNIFORM TRADE SECRETS ACT, CONN. GEN. STAT. § 35-50 *ET SEQ.* AS TO ALL DEFENDANTS)

74.     Plaintiffs incorporate by reference each and every allegation set forth in ¶¶ 1-73 as if fully set forth herein.

75.     Plaintiffs' trade secrets are subject to the protections of the Connecticut Uniform Trade Secrets Act ("CUTSA") as they fall well within the statutory definition of a trade secret as information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer lists that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

76.     Defendants, through the actions of Rao, acquired Veoci's trade secrets by improper means, also using and disclosing such trade secrets knowing they were acquired by improper means and in breach of Defendants' duty to maintain secrecy and non-use.

77.     Plaintiffs have suffered direct and proximate harm by Defendants' misappropriation, entitling Plaintiffs to:  (i) injunctive relief to stop Defendants' misappropriation and misuse of Veoci's trade secrets; (ii) damages for actual loss caused by the misappropriation of the trade secrets, including expenses for research, design and other costs Defendants avoided by reason of the misappropriation; (iii) damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss; (iv) punitive damages in an amount two times of any monetary award, by reason that Defendants maliciously and willfully misappropriated Veoci's trade secrets; and (v) an award of reasonable attorneys' fees in an amount to be determined at trial.

**COUNT THREE**
**(CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 42-110B *ET SEQ.* AS TO ALL DEFENDANTS)**

78.     Plaintiffs incorporate by reference each and every allegation set forth in

¶¶ 1-77 as if fully set forth herein.

79.     At all relevant times, Defendants have been and continue to be engaged in the conduct of trade or commerce as defined by § 42-110b *et seq.* of the Connecticut General Statutes.  The Connecticut Unfair Trade Practices Act ("CUTPA") prohibits unfair and deceptive acts and practices in trade and commerce.  CUTPA provides for the recovery of damages, attorneys' fees and expenses, and for punitive damages.  Punitive damages are an appropriate deterrent for Defendants who have acted in egregious bad faith and in a manner offensive to public policy.

80.     Defendants willfully, maliciously and in bad faith misappropriated Plaintiffs' trade secrets, confidential and proprietary client lists and pricing information by improper means, also using and disclosing such information knowing they were acquired by improper means and in breach of Defendant Rao's duty to maintain secrecy and non-use in accordance with the Confidentiality Agreement.

81.     Defendants' conduct reflects an intentional and wanton violation of the rights of others as recognized under CUTPA to be actionable and offensive to public policy.

82.     Plaintiffs have important customer relationships well known to Defendants, which Defendants have intentionally targeted for purposes of acquiring contracts upon scheduled renewals with Veoci, in bad faith breach of confidentiality and non-use obligations as set forth in the Confidentiality Agreement.

83.     Plaintiffs have proprietary pricing models for its airport contracts, critical to Veoci in submitting competitive bids to RFP requests for digital airport solutions management. Defendants have used this information to underbid Veoci, in bad faith breach of confidentiality

and non-use obligations as set forth in the Confidentiality Agreement.

84.     Defendants have misappropriated Plaintiffs' trade secrets, also knowingly

disclosing and using such trade secrets in bad faith breach of confidentiality and non-use

obligations as set forth in the Confidentiality Agreement.

85.     Defendants' violation of CUTPA was carried out for the purpose of competing

unfairly with Veoci, for which Plaintiffs have suffered monetary damage.

86.     For the reasons set forth, Plaintiffs seek compensatory damages, an award of

attorneys' fees and punitive damages in an amount to be determined at trial.

### COUNT FOUR
**(TORTIOUS INTERFERENCE WITH CONTRACT RELATIONS AND BUSINESS EXPECTANCIES AS TO ALL DEFENDANTS)**

87.     Plaintiffs incorporate by reference each and every allegation set forth in

¶¶ 1-86 as if fully set forth herein.

88.     Plaintiffs have ongoing, long term and important customer relationships well

known to Defendants, which Defendants have intentionally targeted for purposes of acquiring

contracts upon scheduled renewals with Veoci, in a bad faith breach of the confidentiality and

non-use obligations as set forth in the Confidentiality Agreement.

89.     Plaintiffs have proprietary pricing models for its airport contracts, critical to

Veoci in submitting competitive bids to RFP requests for digital airport solutions management.

Defendants have used this information to underbid Veoci, in bad faith breach of confidentiality

and non-use obligations as set forth in the Confidentiality Agreement.

90.     Defendants have misappropriated Plaintiffs' trade secrets, also knowingly

disclosing and using such trade secrets in bad faith breach of confidentiality and non-use

obligations as set forth in the Confidentiality Agreement.

91.    In the Confidentiality Agreement Defendant Rao, and AeroSimple as Rao's alter ego, agreed: (i) not to disclose Company confidential or proprietary information, either during or after his employment with Veoci; (ii) to assign all right, title and interest in inventions and ideas, patentable or not, to the Company; and (iii) to return all information, whether stored in documents, electronically or otherwise, including confidential information, trade secrets or intellectual property belonging to the Company upon his leaving his employment with Veoci. *See* EXHIBIT B.  Maintaining confidentiality and non-use was and remains an ongoing obligation as it concerns proprietary information belonging to Veoci never belonging to Rao.  *See* EXHIBIT B at 1 ("I [Rao] agree to hold in confidence and not to disclose or use, or authorize anyone else to disclose or use, any confidential or proprietary information of the Company or its Affiliates *at any time either during or after the term of my employment or engagement, without the express consent of the Company or, in the case of information of its Affiliates, without the express consent of both the Company and the Affiliate concerned*.") (emphasis supplied).

92.    Several existing customers have alerted Veoci that Defendant Rao has contacted them, specifically asking for an opportunity to show them "his" airport solutions management product which he claims to be superior to the Veoci product those customers are currently using.

93.    Defendants have encouraged Veoci's customers to no longer deal with Veoci and instead transfer to Defendant AeroSimple's airport solutions management product.

94.    Defendants have intentionally and improperly interfered with the business relationship between Veoci and its customers, including, but not limited to, San Francisco International Airport.

95.    As a result of Defendants' tortious and malicious actions, Plaintiffs have suffered monetary damages, as well as immediate and irreparable harm to its business and business relationships with customers, in an amount to be determined at trial.

## COUNT FIVE
### (BREACH OF CONTRACT AS TO ALL DEFENDANTS)

96.    Plaintiffs incorporate by reference each and every allegation set forth in ¶¶ 1-95 as if fully set forth herein.

97.    The Employment Agreement annexed as EXHIBIT A, accepted and agreed to as signed by Defendant Rao, is a binding contract between Plaintiffs and Defendants, including Defendant AeroSimple as the alter ego business entity of Defendant Rao.

98.    The Employment Agreement specifically incorporates by reference the Confidentiality Agreement annexed as EXHIBIT B.  The Confidentiality Agreement, accepted and agreed to as signed by Defendant Rao, is also a binding contract between Plaintiffs and Defendants, including Defendant AeroSimple as the alter ego business entity of Defendant Rao.

99.    Plaintiffs have fully performed all duties under the Employment Agreement and the Confidentiality Agreement.

100.    Defendants are in continuing breach of the Employment Agreement and the Confidentiality Agreement as detailed by each and every allegation incorporated herein by reference.

101.    Plaintiffs have suffered damages proximately caused by Defendants' continuing breach of the Employment Agreement and the Confidentiality Agreement.

102.    Defendants acknowledge in the Confidentiality Agreement as also incorporated by reference in the Employment Agreement that Defendants' breach gives rise to a duty to

indemnify Plaintiffs and that any breach by Defendants of the Employment Agreement and the Confidentiality Agreement results in irreparable harm to Plaintiffs.

103.    As a result of Defendants' continuing breach of the Employment Agreement and the Confidentiality Agreement Plaintiffs have suffered monetary damages, as well as immediate and irreparable harm to its business and business relationships with customers, in an amount to be determined at trial, including, but not limited to, specific affirmative relief to address the irreparable harm so inflicted, costs and attorneys' fees as set forth by contract.

**COUNT SIX**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ALL DEFENDANTS)**

104.    Plaintiffs incorporate by reference each and every allegation set forth in ¶¶ 1-103 as if fully set forth herein.

105.    The Employment Agreement and the Confidentiality Agreement have an implied covenant of good faith and fair dealing.  Every contract imposes upon each party a duty of good faith and fair dealing in the performance of contractual duties.

106.    Defendants' breach of the Employment Agreement and the Confidentiality Agreement was malicious and in bad faith including, but not limited to, by reason of Defendants' intentional misappropriation, disclosure and wrongful use of Plaintiffs' trade secrets, intellectual property, confidential business information and unfair trade practices offensive to public policy.

107.    As a result of Defendants' tortious and malicious actions, Plaintiffs have suffered monetary damages, as well as immediate and irreparable harm to its business and business relationships with customers, in an amount to be determined at trial.

## COUNT SEVEN

### (UNJUST ENRICHMENT AS TO ALL DEFENDANTS)

108.    Plaintiffs incorporate by reference each and every allegation set forth in ¶¶ 1-107 as if fully set forth herein.

109.    Defendants have and continue to benefit as a direct consequence of their improper use of Plaintiffs' trade secrets and proprietary and confidential business information.

110.    Defendants have unjustly retained these benefits, and continue to retain these benefits, without compensating Plaintiffs for such illegally obtained value enjoyed by Defendants.

111.    Defendants have acted unjustly, contrary to equity and good conscience in receiving and retaining such benefits.  Plaintiffs have thereby suffered monetary harm in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seeks relief as to all counts of the Complaint, including:

**AS TO COUNT ONE**:

(i)     injunctive relief to stop all sales and marketing worldwide of the Defendants'
        airport product developed through misappropriation and misuse of Veoci's trade
        secrets, including affirmative action to be taken to protect the trade secrets;

(ii)    damages for actual loss caused by the misappropriation of the trade secrets,
        including expenses for research, design and other costs Defendants avoided by
        reason of the misappropriation;

(iii)   damages for any unjust enrichment caused by the misappropriation of the trade
        secrets that is not addressed in computing damages for actual loss;

(iv)    exemplary damages in an amount two times of any monetary award, by
        reason that Defendants maliciously and willfully misappropriated Veoci's trade
        secrets; and

(v)     an award of attorneys' fees and costs.

**AS TO COUNT TWO**:

(i)     injunctive relief to stop Defendants' misappropriation and misuse of Veoci's trade
        secrets;

(ii)    damages for actual loss caused by the misappropriation of the trade secrets,
        including expenses for research, design and other costs Defendants avoided by
        reason of the misappropriation;

(iii)   damages for any unjust enrichment caused by the misappropriation of the trade

secrets that is not addressed in computing damages for actual loss;

(iv)    punitive damages in an amount two times of any monetary award, by reason that

Defendants maliciously and willfully misappropriated Veoci's trade secrets; and

(v)    an award of attorneys' fees and costs.

**AS TO COUNT THREE**:

(i)    compensatory damages;

(ii)    punitive damages; and

(iii)    an award of attorneys' fees and costs.

**AS TO COUNT FOUR**:

(i)    compensatory damages, including disgorgement of Defendants' profits; and

(ii)    an award of attorneys' fees and costs.

**AS TO COUNT FIVE**:

(i)    compensatory damages;

(ii)    affirmative relief to address irreparable harm suffered by Plaintiffs; and

(iii)    an award of attorneys' fees and costs.

**AS TO COUNT SIX**:

(i)    compensatory damages, including disgorgement of Defendants' profits; and

(ii)    an award of attorneys' fees and costs.

**AS TO COUNT SEVEN**:

(i)    compensatory damages, including disgorgement of Defendants' profits.

**AS TO COUNTS ONE THROUGH SEVEN**:

(i)    pre-judgment interest;

(ii)    post-judgment interest;

(iii)    costs; and

(iv)    such other appropriate legal and equitable relief deemed just and proper by the

Court.


PLAINTIFFS
Grey Wall Software, LLC and
Veoci Inc.

By: /s/ Patrick J. McHugh
Patrick J. McHugh (CT14072)
Patrick McHugh Law LLC
303 South Broadway, Suite 234
Tarrytown, NY 10591
T: 203-403-2217
C: 203-668-5036
F: 914-478-4142
patrick@pmchughlaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

```
------------------------------------------------------------------ x
GREY WALL SOFTWARE, LLC                    :
and VEOCI INC.,                            :
                                           :        3:22-cv-00203
                   Plaintiffs,             :
                                           :
           v.                              :
                                           :
AEROSIMPLE LLC and                         :
VISWESWARA RAO VISWANADHA                  :
a/k/a VISWESWARA VISWANADHA RAO            :
a/k/a VISHU RAO,                           :
                                           :
                   Defendants.             :
------------------------------------------------------------------ x
```

**VERIFICATION**

I, SUKH GREWAL, hereby state as follows:

1.   I am the co-founder and CEO of Plaintiff Grey Wall Software, LLC, plaintiff in the above-

referenced action.

2.   I am the co-founder and President of Veoci Inc., plaintiff in the above-referenced action.

3.   I have read the foregoing Verified Complaint and exhibits thereto and know the contents

thereof.  The same are true of my own knowledge, except as to matters therein stated to

be alleged upon information and belief, and, as to those matters, I believe them to be

true.

I declare and verify under penalty of perjury as set forth in 28 U.S.C. § 1746 that the
foregoing is true and correct.

Executed on this the 1st day of February, 2022.

_____
Dr. Sukhminder S. Grewal
#555979694_20220201