UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Grey Wall Software, LLC, and Veoci Inc,** | : : : | |
| | : | No. 22-cv-203 (RAR) |
| **Plaintiffs,** | : : | |
| v. | : : | DECEMBER 2, 2022 |
| **AeroSimple LLC and Viswerwara Rao Wiswanadha,** | : : : : | |
| **Defendants.** | | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS, AND GRANTING PLAINTIFFS' CROSS-MOTION**

Grey Wall Software, LLC and Veoci Inc. ("Plaintiffs") have sued their former employee, Visweswara Rao Viswanadha ("Rao"), and his company, AeroSimple LLC ("Defendants") for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (Count One); Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. § 35-50 *et seq.* (Count Two); Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110B *et seq.* (Count Three); Tortious Interference with Contract Relations and Business Expectancies (Count Four); Breach of Contract (Count Five); Breach of Covenant of Good Faith and Fair Dealing (Count Six); and Unjust Enrichment (Count Seven). [Compl., Dkt. 1.]

Defendants have moved to dismiss all counts against Rao under Fed. R. Civ. P. 12(b)(5). [Dkt. 22] Defendants have also moved to dismiss Count Four of the complaint against all defendants and Counts Five and Six against AeroSimple under Fed. R. Civ. P. 12(b)(6). Defendants argue that Plaintiffs failed (1) to serve process properly on Rao, (2) to plead facts that

1

allege they were guilty of fraud, misrepresentation, intimidation, or malice to satisfy the necessary elements of tortious interference with contract relations or business expectancies, and (3) to plead facts that show AeroSimple is an alter-ego of Rao and thus also liable on the employment contract. Plaintiffs filed a cross motion to direct service upon Rao via e-mail pursuant to Fed. R. Civ. P. 4(f)(3), which allows a court to order that an individual may be served at a place not within any judicial district of the United States "by other means not prohibited by international agreement." [Dkt. 38]

For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED as to Counts Five and Six, and DENIED as to Count Four and defendant Rao. Plaintiffs' cross-motion is GRANTED.

## I.   BACKGROUND[1]

Veoci Inc. ("Veoci") is a software development company and service provider specializing in digitizing comprehensive aviation requirements and protocols for airports, including as mandated by the Federal Aviation Administration ("FAA"), transferring paper processes to a digital solutions platform through its proprietary Airport Digital Solutions Software suite built on its proprietary no-code application builder with end-user customization to manage all aspects of daily airport operations. [Compl. ¶ 1, Dkt. 1] Veoci's no-code builder functionality empowers the rapid development of software, tailored to an airport's existing forms and protocols, for immediate deployment, execution and customer use. [Compl. ¶ 1] In reducing the "coding" that traditional software development requires by as much as 95%, Veoci creates new software and enhancements

---

[1] The following recitation of facts is taken from plaintiffs' complaint and attached exhibits, along with the exhibits attached to the parties' briefs.

2

with extraordinary speed, distinguishing itself from competitors and establishing itself as the dominant product supplier in the airport digitized solutions market. [Compl. ¶ 1]

Veoci entered into the airport digital solutions market in August of 2011 when it met with the airport director of Tweed New Haven Airport. [Compl. ¶ 3] It conducted onsite interviews with the manager of airport operations and other personnel. After this visit, Veoci concluded that airport operations provided a business opportunity for its digitized no-code software platform. [Compl. ¶ 3, 29] In order to digitize all aspects of Tweed Airport's daily operations, Veoci committed time, resources and personnel to create multiple comprehensive databases that cross-referenced each other, and thereby integrated all aspects of task and inspection reporting into a cloud-based software system. [Compl. ¶ 4, 31]

On December 3, 2012, Veoci hired Rao as a part of the engineering solutions team to advance the development and expansion of airport applications and solutions based on its no-code platform. [Compl. ¶ 6] Rao was responsible for overseeing Veoci's Airport Digital Solutions software business. [Compl. ¶ 8] Prior to joining Veoci, Rao had no background or experience in aviation or airport operations. Veoci hired Rao because he had experience in digitizing manual paper records to a software platform. [Compl. ¶ 7] Rao signed both an employment contract with Veoci and Veoci's Confidentiality, Proprietary Information and Non-Competition Agreement. [Compl. ¶ 9] In the Confidentiality agreement, Rao agreed: (i) not to disclose Company confidential or proprietary information, either during or after his employment with Veoci; (ii) to assign all right, title and interest in inventions and ideas, patentable or not, to the Company; and (iii) to return all information, whether stored in documents, electronically or otherwise, including

confidential information, trade secrets or intellectual property belonging to the Company upon the conclusion of his employment with Veoci. [Compl. ¶ 9, 34]

During his tenure, Rao oversaw the Veoci's team development, deployment, and expansion of its Airport Digital Solution software business. [Compl. ¶ 37] Rao and his team tailored, refined and enhanced Veoci's proprietary and confidential no-code application builder with end-user customization for airport operations.  In late summer of 2018, Rao informed Veoci that he was leaving the company and returning to the Republic of India. [Compl. ¶ 12] His last day was November 1, 2018.

Around the fall of 2021, the city of Dallas, Texas issued a Request for Proposal ("RFP") for a digital based solution to enhance airport operations at Dallas Love Airfield. [Compl. ¶ 13, 46] Veoci submitted a bid for the project and so did Defendant, AeroSimple, a company that was unknown to Veoci at that time. [Compl. ¶ 13, 46]   Upon review of the submitted bids, Dallas issued its scoring summary for both active and eliminated submissions.  The scoring summary revealed that AeroSimple significantly underbid the Dallas RFP in comparison with other bid submissions.  It was then that Veoci learned that its former employee, Rao, was the founder and CEO of AeroSimple. [Compl. 46]

Consequentially, Veoci launched an investigation which allegedly revealed that:
a. months prior to leaving Veoci, Rao purchased the AeroSimple domain;
b. prior to his departure, Rao's documentation of requested product "enhancements" tailored to Veoci's airport business client needs slowed dramatically;

    c.  Rao made direct contacts with existing Veoci customers, known to Rao only by reason of his prior employment at Veoci;

    d.  there was an email received prior to Rao's departure from Veoci from a German company expressing an interest to partner with Veoci, which Rao forwarded to his own personal email and never advised Veoci's management of the potential business opportunity;

    e.  upon departing from Veoci, Rao returned a company laptop which was was wiped clean of all data, files, emails, etc.

[Compl. ¶ 48]

On February 21, 2021, Rao contacted Ms. Dia Wynn, the prior Airport Operations Manager and Airfield Operations Supervisor of San Francisco International Airport, and had a conversation with her that allegedly went as follows:

> VR: Hi Dia. Good evening. How are you doing? This is Vishu.
> . . .
> DW: Are you back with Veoci?
> VR: No. I started my own company called Aerosimple. Took 2 years to develop the software and we already have 10 customers.
> DW: Congratulations that is fabulous! Sounds like aviation! I'm sure Veoci isn't too happy!
> VR: Haha. Thanks. They are not. But I waited through my noncompete period. I am going head to head with them on a few RFPs.
> . . .
> When you have some time, I would love to show you what we built.
> . . .
> I'll email you a link so you can pick a time based on your availability.
> DW: That sounds great.

[Compl. ¶ 51, Ex. J] Several other existing customers also alerted Veoci that Rao had contacted them and asked them for an opportunity to show them his new airport digital solutions product which he claimed to be superior to the Veoci product that the customers are currently using. [Compl. ¶ 49]

AeroSimple is a limited liability company that was formed in November 2019 in the state of Wyoming. [Compl. ¶ 53, Ex. L] It has a mailing address in Wyoming as well as a registered agent named "Registered Agents Inc." that has the same Wyoming address. [Ex. L] The "Home" page of its website states: "**Airport Operations Software.** Streamline, Simplify and Succeed with an all-in-one integrated platform." [Compl. ¶ 59, Ex. P] The "About" page states that the company supports over 150 airports around the world. The same page also lists Rao as the "Co-Founder" and "CEO" of the company. Next to him, two other people are titled "Co-Founder" with different positions in the company. [Ex. P] In addition, there are three other members listed as executives. The "Contact Us" page states that its mailing address is 315 Front St, STE 11, New Haven, CT 06513."

On February 3, 2022, Veoci brought this action against both defendants claiming violations of the Defend Trade Secrets Act, CUTSA, CUTPA, Tortious Interference with Contract Relations and Business Expectancies, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing and Unjust Enrichment. The complaint was served upon AeroSimple through "Heather Hilton, clerk for registered agent, who is designated by law to accept service of process on behalf of Registered Agents, Inc." on March 24, 2022. [Dkt. 15] The complaint was also served upon Rao through the same person. [Dkt. 16] Defendants then filed their Motion to Dismiss on April 15, 2022. [Dkt. 22]

## II. DISCUSSION

### A. Rule 12(b)(5): Motion to Dismiss for Insufficient Service of Process

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016). The motion "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Carney v. Beracha*, 996 F. Supp. 2d 56, 61 (D. Conn. 2014). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

Defendants contend that all counts against Rao should be dismissed for ineffective service of process as plaintiffs effectuated service on a registered agent for AeroSimple, but not on Rao as an individual. [Def. Br. 13, Dkt. 22] Rao is a citizen of India, and thus Rule 4(f) controls the manner in which he should have been served. Defendants contend that Rao does not have a designated agent and there is nothing on the docket that shows Plaintiffs complied with Rule 4(f). Plaintiffs argue that this Court has personal jurisdiction over Rao because he is an "alter ego" of AeroSimple. [Pl. Opp. 12, Dkt. 36] Based on this, Plaintiffs contend that service on AeroSimple is sufficient as service on Rao. Specifically, Plaintiffs argue that AeroSimple is "nothing more than a mere instrumentality serving no legitimate purpose and used primarily as an intermediary to perpetuate fraud[.]" [Pl. Opp. 13]

7

For reasons discussed *infra*, plaintiffs' argument that AeroSimple is an alter ego of Rao is unavailing. Plaintiffs have not met their burden of showing proper service on Rao in his individual capacity, and have produced no evidence that Rao has a designated agent that can accept service on his behalf.

In the alternative, Plaintiffs cross-move for an order directing service upon Rao via e-mail pursuant to Rule 4(f)(3). Plaintiffs argue that despite their reasonable efforts to locate a physical address for Rao, they have been unsuccessful in their attempts. [Pl. Opp. 17] Plaintiffs assert that they employed the Connecticut Marshal service to attempt to effectuate service at the published mailing address for AeroSimple. The agent attested to "diligently search[ing] [his] precincts to locate the [ ] defendant" and "was informed by the landlord . . . that both defendants moved over 2 years ago and [there was] no forwarding information for them[.]" [Dkt. 37-3]

Rule 4(f) authorizes service upon individuals in foreign countries: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention]; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .; or (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f). "The rule does not specify any hierarchy and, consistent with the rule, courts in the Second Circuit 'have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f).'" *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 341 (E.D.N.Y. 2021). As these courts have found, "a plaintiff is not required to attempt service through

the other provisions of Rule 4(f) before the [c]ourt may order service pursuant to Rule 4(f)(3)." *Id.* Thus, "nothing in Rule 4(f) itself . . . suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." *Id.*

It is left to the court's discretion whether to authorize service "by other means" under Rule 4(f)(3). "A [c]ourt may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Grp. One Ltd.*, 523 F. Supp. 3d at 342. "Service satisfies due process when it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380 (PGG) (OTW), 2019 WL 6498305, at *2 (S.D.N.Y. Dec. 2, 2019) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, "district courts in the Second Circuit have generally required two additional showings before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has made a reasonable effort to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Merrimack Mut. Ins. Co. v. New Widetech Indus. Co.*, No. 20-CV-546 (MPS), 2020 WL 5879405, at *2 (D. Conn. Oct. 2, 2020).

District courts disagree over whether a court can allow e-mail service, pursuant to Rule 4(f)(3), upon a defendant who resides in a country that is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Convention"). The purpose of the

9

Convention was to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017); *see* Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Preamble, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. The Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash*, 137 S. Ct. at 1507. Article 10 of the Convention addresses "additional methods of service that are permitted by the Convention (unless the receiving state objects)." *Id.* at 1508. These methods include the sending of service via postal mail. *See id.* at 1513. India has objected to Article 10 of the Convention. *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). *See also Declaration, Reservation, Notification*, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/notifications/?csid=984&disp=resdn.

A number of courts have held that a plaintiff cannot serve process via e-mail when the defendant is located in a country that is a signatory of the Convention. *See Amazon.com Inc., v. Robojap Technologies LLC, et al.*, No. C20-694 MJP, 2021 WL 4893426, at *2 (W.D. Wash. Oct. 10, 2021) (concluding that allowing service via e-mail on defendants in India would contravene the Convention). *See also Smart Study Co., LTD. V. Acuteye-US, et al*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297, at *4 (S.D.N.Y. July 21, 2022) (concluding that service via e-mail on litigants located in China is not permitted by the Convention because "methods of service that are not specifically authorized are impermissible under the Convention"); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) ("This Court therefore determines that email service is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods."); *Luxottica*

*Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (treating Article 10 objections as precluding e-mail service).

In contrast, a majority of courts have found that service via e-mail is permitted by the Convention. *See Pearson Educ., Inc. v. Aggarwal*, No. 17-CV-203 (KMW), 2022 WL 3700142, at *5 (S.D.N.Y. Aug. 26, 2022) (courts "have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email."); *Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, No. 20-CV-3865, 2021 WL 915662, at *4 (E.D. Pa. Mar. 10, 2021) (concluding that e-mail service is permissible and not covered by an Art. 10 objection); *Pearson Educ. Inc. v. Doe 1*, No. 18CV7380PGGOTW, 2019 WL 6498305, at *2 (S.D.N.Y. Dec. 2, 2019) (finding service by e-mail to be outside the scope of the Convention's Art. 10 means of alternative service, and thus service by e-mail to defendants in India was permissible); *Shinde v. Nithyananda Found.*, No. EDCV1300363JGBSPX, 2014 WL 12597121, at *7 (C.D. Cal. Aug. 25, 2014) ("The Court agrees with the numerous courts that have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *F.T.C. v. Pecon Software LTD., et al.*, No. 12 Civ. 7186 (PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (noting that India has not explicitly objected to service by e-mail). *See also Grp. One Ltd.*, 523 F. Supp. 3d at 343-44 ("[b]ecause Germany has not explicitly objected to service by electronic means . . . the Court concludes that service via email on Defendants may qualify as an alternative means of service under Rule 4(f)(3)."); *Mattel, Inc. v. Animefun Store*, No. 18 CIV. 8824 (LAP), 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("China's objection

11

to service by postal channels under Article 10 of the Hague Convention does not encompass service by email.").

However, and critically, "[t]he Hague Convention does not apply 'where the address of the person to be served with the document is not known.'" *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (citing Convention art. 1). *See also Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22-CV-558 (PAE), 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022); *Smart Study Co.*, 2022 WL 2872297, at *5. "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Kelly Toys Holdings,* 2022 WL 3701216, at *6 (noting that counsel searched and found a California physical address cited on defendant's websites, and investigated whether the address was connected to defendant by dispatching an investigator to the location). *See, e.g.*, *Shen*, 2018 WL 4757939, at *4 (finding efforts reasonably diligent, and approving service by e-mail, where plaintiff investigated the physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. LLC v. Rajgarhia*, No. 09 CIV.7459(SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (finding that plaintiff's address was "not known," where plaintiff had "actively, though unsuccessfully, attempted to obtain [Indian defendant's] address in a variety of ways").

This Court need not resolve the conflict as to whether service can be made via e-mail when the defendant is located in a country that is a signatory of the Hague Convention because the Court finds that the Convention does not apply in this matter. Plaintiffs have made reasonable efforts to search for Rao and have been unsuccessful in obtaining a known address for him in order to effectuate service. Plaintiffs searched Roa's LinkedIn profile, the AeroSimple website, and the website of another company co-founded by Rao. [Compl. ¶ 53, 55-59] Both websites list a Connecticut address. Plaintiffs hired a Marshal to serve process at the Connecticut address. After conducting a search within his precincts to locate the defendants, the Marshal stated the address had been vacated by the defendants over two years ago. With no forwarding address or information left to the landlord, Plaintiff is without recourse to effectuate service on Rao. Therefore, the procedures outlined by the Convention are unavailable to Plaintiff. Thus, this Court finds that court intervention is necessary.

Plaintiffs ask this Court to serve process on Rao through e-mail. "Courts have repeatedly authorized service by email to defendants in countries, including India, that have objected to Article 10, finding that email is not included within the scope of Article 10." *Pearson Educ. Inc.*, 2019 WL 6498305, at *2. *See also* cases cited *supra*. Email service has also repeatedly been found by courts to meet the requirements of due process. *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) (collecting cases). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *Pearson Educ. Inc.*, 2019 WL 6498305, at *3. Rao has constructive notice of the lawsuit as he sent an unsolicited e-mail to plaintiffs two days after the complaint was filed contesting the merits of the

lawsuit and stating he is "ready to fight this out." [Dkt. 37, Ex. 1] Plaintiffs have asked this Court to use the very same e-mail address to effectuate service.

### B. Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," meaning that there is "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556–57). The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). In deciding a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### i. Count Four: Tortious Interference with Contract Relations and Business Expectancies

Defendants contend that plaintiffs' complaint fails to adequately plead facts that would satisfy the necessary elements of tortious interference with contractual relations or business expectancies. [Def. Br. 9] Defendants argue that since plaintiffs do not allege that defendants were

14

guilty of fraud, misrepresentation, intimidation, or molestation, or that defendants acted maliciously, plaintiffs have failed to state a claim upon which relief can be granted. [Def. Br. 9] Plaintiffs argue that the allegations are sufficient because the complaint alleges that the defendants went on a "hunting expedition to poach existing client relations and thwart contract renewals on a forward-going basis," and that defendants are using plaintiffs' confidential pricing structure to give them an unfair advantage in the market for competing airport proposals. [Pl. Opp. Br. 19-20] According to plaintiffs, a conversation between Rao and Ms. Dia Wynn, former Airport Operations Manager and Airfield Operations Supervisor at San Francisco Airport, demonstrates defendants' tortious interference of defendants with an existing client. [Pl. Opp. Br. 22]

Under Connecticut law, "[a] claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 124 A. 3d 847, 858 (Conn. 2015). "[N]ot every act that disturbs a contract or business expectancy is actionable. *Id.* at 860. "[F]or a plaintiff to successfully prosecute [an action for tortious interference] it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *Id.* "The plaintiff . . . must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." *Id.* "[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means . . . . '[A] claim is

15

made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.'" *Robert S. Weiss & Assocs., Inc. v. Wiederlight*, 546 A.2d 216, 223 (Conn. 1988).

Construing the factual allegations as true and drawing all reasonable inferences in favor of the non-moving party, plaintiffs have pled sufficient facts to state a claim under Count Four. Malice can be shown by improper means or improper motive and, in this case, Plaintiffs allege that the defendants have been using their confidential pricing structure in order to underbid plaintiffs on RFPs. Since the pricing structure was only known to Rao through his six-year employment with plaintiffs, his alleged use of it presents an unfair market advantage.

### ii. Counts Five & Six: Breach of Contract and Breach of Covenant of Good Faith & Fair Dealing

Defendants argue that because AeroSimple was not a party to Rao's employment contract or confidentiality agreement with Veoci, AeroSimple cannot be held liable for any alleged breach of an alleged contract or covenant of good faith and fair dealing by Rao. [Def. Br. 10] As defendants assert and plaintiffs concede in their complaint, AeroSimple did not exist until November of 2019. In addition, AeroSimple asserts that it did not receive any salary, bonuses, compensation, or any consideration from Veoci under those agreements. Plaintiffs contend that AeroSimple is the alter ego of Rao, and thus his alleged breach should be imputed to AeroSimple as well. [Pl. Opp. 23-24] Plaintiffs argue that the conduct of Rao supports an alter ego analysis because he (1) purchased the AeroSimple domain months prior to his departure, (2) has contacts with existing Veoci customers who were only known to him through his employment with Veoci,

16

(3) did not advise Veoci of a potential business opportunity and instead forwarded the e-mail from a prospective client to his personal e-mail, and (4) wiped clean all of the data on his company laptop once he returned it to Veoci. [Pl. Opp. 24] In response to this argument, defendants claim that plaintiffs make no allegations that would allow the corporate veil of AeroSimple to be pierced or make any allegations regarding ownership and control over AeroSimple. [Def. Br. 10-11]

"[T]he obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for their breach. Parties to a contract cannot thereby impose any liability on one who, under its terms, is a stranger to the contract, and, in any event, in order to bind a third person contractually, an expression of assent by such person is necessary." *FCM Grp., Inc. v. Miller*, 17 A.3d 40, 54 (Conn. 2011) (citations omitted). In other words, "[a] person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms." *Id.*

Under Connecticut law, the corporate veil may be pierced where "a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock[.]" *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 79 (D. Conn. 2012). Under federal law, courts disregard corporate formalities when a corporation's owner exercises "total and exclusive domination of the corporation." *Id.* "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time

no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.*, 447 A.2d 406, 410 (Conn. 1982).

As stated *supra*, plaintiffs' have not pled sufficient facts to allege that AeroSimple is an alter ego of Rao. Rao signed his employment contract and confidentiality agreement on December 3, 2012. [Compl. Ex. A] At that time, AeroSimple did not exist and was not a signatory to the employment contract or the confidentiality agreement. AeroSimple was founded in November of 2019. The website shows that AeroSimple has three co-founders and other executives on its team. Plaintiffs have not pled sufficient facts that show Rao is in complete domination of AeroSimple, only that he is one of the co-founders. This is insufficient to pierce the corporate veil of AeroSimple and hold it potentially liable for Rao's alleged breach.

### III. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is GRANTED as to Counts Five and Six, and is DENIED as to Count Four and defendant Rao. Plaintiffs' cross-motion is GRANTED. This Court also *sua sponte* extends the time for plaintiff to serve Rao because there is no time limit on service of process on foreign defendants. *See* Fed. R. Civ. P. 4(m); *Carney*, 996 F. Supp. 2d at 69. Plaintiffs shall serve the summons and complaint via e-mail to Rao within 5 days of the date of this Order.

**IT IS SO ORDERED.**

                                                                       /s/
                                          **Hon. Robert Richardson**
                                          **United States Magistrate Judge**

**Dated this day in Hartford, Connecticut: December 2, 2022**