# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GREY WALL SOFTWARE, LLC,    :
AND VEOCI  INC.,    :
    :    **3:22-cv-203 (RAR)**
PLAINTIFFS,    :
    :
v.    :    **SEPTEMBER 6, 2023**
    :
AEROSIMPLE LLC AND    :
VISWERWARA  RAO    :
WISWANADHA,    :

DEFENDANTS.


## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Defendants Visweswara Rao Viswanadha ("Rao") and AeroSimple LLC ("AeroSimple," collectively "Defendants") have filed three counterclaims against Plaintiffs Grey Wall Software, LLC ("Grey Wall") and Veoci Inc. ("Veoci," collectively "Plaintiffs").  Defendants have asserted claims for vexatious litigation, tortious interference with prospective contractual relations and expectancies, and seek a declaratory judgment that both an employment and confidentiality agreement signed by Rao are unenforceable for public policy reasons. (Dkt. #62.) Plaintiffs have moved to dismiss all three counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. #63.)

For the reasons set forth below, Plaintiffs' Motion to Dismiss is GRANTED as to the First and Third Counterclaims and DENIED as to Second Counterclaim.[1]

---

[1] Plaintiffs argue that Defendants cannot bring a counterclaim for vexatious litigation when the underlying lawsuit that is the subject of the vexatious litigation claim is still pending. Thus, Plaintiffs argue that the First Counterclaim must fail as a matter of law. (Dkt. #63 at 1.) Defendants concede and consent to the dismissal of the vexatious litigation counterclaim. (Dkt. #67 at 1.)

## I.   BACKGROUND

The history and factual background of this case are recited in this Court's prior ruling on Defendants' Motion to Dismiss. (Dkt. #57.) However, in their counterclaims, Defendants introduce new facts not included in this Court's prior recitation.[2] The Court assumes the parties' familiarity with the facts of the underlying claim but will describe the relevant procedural history and factual background here.

In December 2012, Grey Wall hired Rao as an employee. (Dkt. #62, Counterclaim ¶10-12.)[3] Rao subsequently signed a form related to his employment ("Employment Agreement") and a "Confidentiality, Proprietary Information, and Non-Competition Agreement" ("Confidentiality Agreement"). (Dkt. #62, Counterclaim ¶13-14.)[4] In the Confidentiality Agreement, for the one-year period following cessation of his employment, Rao agreed not to undertake or participate in any project "involving the use of technologies to facilitate IM communication through website or and [sic] mobile applications." (Dkt. #62, Counterclaim ¶15.) Additionally, Rao agreed to not solicit any business from any customers of Grey Wall during the

---

[2] The relevant facts are taken from the Counterclaims.  In the context of a motion to dismiss, all facts alleged by the non-movant are presumed to be true. *Gonzalez v. Hasty*, 651 F.3d 318 (2d Cir. 2011).

[3] There is a factual dispute regarding the scope of Rao's initial employment and duties. However, in the context of this ruling, the purpose of Rao's initial hiring is irrelevant. The timing of his hire is undisputed.

[4] There is a factual dispute as to when, in relation to his employment, Rao signed the agreements. Specifically, plaintiffs allege that the agreements were signed "in conjunction with [Rao's] employment." (Complaint ¶9.) The exhibits accompanying the complaint indicate that both agreements were dated December 3, 2012. (Complaint, Exhibits. A and B.)  Defendants, however, allege that the agreements were signed "at least six months" after Rao was hired. (Dkt. #62, Counterclaim ¶13-14.)  The date that the agreements were signed is irrelevant in the context of the Motion to Dismiss.  It is undisputed that Rao signed both agreements.

twenty-four months prior to his cessation of employment and for a one-year period following the cessation of his employment. (Dkt. #62, Counterclaim ¶16.)[5] Apart from continued employment, Rao received no additional compensation for signing either document. (Dkt. #62, Counterclaim ¶17, 23.) On October 31, 2018, Rao ended his employment with Grey Wall. (Dkt. #62, Counterclaim ¶26.)

Later, on February 3, 2022, the Plaintiffs sued Rao and Rao's current company, AeroSimple, for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. and for other claims. (Dkt. #1.)

After the lawsuit was filed against the Defendants, AeroSimple responded to multiple bid requests from airports and airport operators offering products and services. (Dkt. #62, Counterclaim ¶39.) Plaintiffs also responded to several of the same bids. (Dkt. #62, Counterclaim ¶40.) On multiple occasions, Plaintiffs have informed these potential customers of the lawsuit that Plaintiffs filed against the Defendants. (Dkt. #62, Counterclaim ¶41.) According to the Counterclaim, Plaintiff's conduct in sharing the existence of the lawsuit subsequently caused at least one potential client to withdraw its acceptance of Aerosimple's bid. (Dkt. #62, Counterclaim ¶42.)

On January 30, 2023, following the Court's decision on Defendant's Motion to Dismiss and Rao's service of process, Defendants filed their Answer, Defenses, and Counterclaims. (Dkt. #62.) The Answer disputes material facts, pleads fourteen affirmative defenses, and asserts three counterclaims. (Dkt. #62.) The Counterclaims allege vexatious litigation, tortious interference with prospective contractual relations and expectancies, and seek a declaratory judgment that the

---

[5] There is a factual dispute regarding the terms of the Confidentiality Agreement. The Court notes that Defendant "respectfully refers [to] the trier of fact" regarding the full and accurate statements of the provisions of both agreements.  (Dkt. #62, Answer ¶8-9, 33-36.)

Confidentiality Agreement and Sections 3 and 5 of the Employment Agreement that Rao signed

are unenforceable for public policy reasons. (Dkt. #62, Counterclaim.) On February 20, 2023,

Plaintiffs filed a Motion to Dismiss all three counterclaims, pursuant to Fed. R. Civ. P. 12(b)(6).

(Dkt. #63.)

## II.   STANDARD OF REVIEW

"In considering a motion to dismiss a counterclaim, the court applies the same standards

as a motion to dismiss a complaint." *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175

(S.D.N.Y. 2021). When deciding a Rule 12(b)(6) motion, "a district court may consider the facts

alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F. 3d 104,

111 (2d Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," meaning that there

is "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S at 678 (citing

*Twombly,* 550 U.S. at 556-57). The Court must "accept[] as true all allegations in the complaint

and draw[] all reasonable inferences in favor of the non-moving party." *Gonzalez v. Hasty,* 651

F.3d 318 (2d Cir. 2011) *(*citing *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,

517 F. 3d 104,114 (2d Cir. 2008)).  "Although all allegations contained in the complaint are

assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *Wilson v. Dantas,* 746 F.3d

530, 535 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "The function of a motion to dismiss is

'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dep't Store Co.*, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). The issue is whether the [counter]claimant is entitled to offer evidence to support the claims." *Stanley Works Israel Ltd. v. 500 Grp., Inc*., 332 F. Supp. 3d 488, 497 (D. Conn. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007)) (internal quotation marks omitted).

## III.    DISCUSSION

### A. Tortious Interference with Prospective Contractual Relations and Business Expectancies

In connection with the Second Counterclaim, the Plaintiffs argue that the Defendants have failed to adequately plead sufficient facts to establish the elements of tortious interference with prospective contractual relations or business expectancies. (Dkt. #63 at 1-2.) Specifically, Plaintiffs argue that Defendants' counterclaim contains "bare bones statements" and "all-too-casual legal castigations without support." (Dkt. #64 at 6.)

Defendants argue that the tortious interference claim has been sufficiently pled because the Defendants are alleging that the Plaintiffs informed potential clients of AeroSimple of the pending litigation and that this action caused "the airport or airport operators to withdraw[ ] its [sic]  acceptance of AeroSimple's bid." (Dkt. #67 at 6.)  According to Defendants, informing prospective clients of the litigation against Defendants demonstrates tortious interference with prospective contractual relationships.  Defendants contend that the purpose and intent of Plaintiffs' lawsuit was to use the existence of the litigation to interfere with AeroSimple's prospective contractual relationships. (Dkt. #67 at 6.)

Under Connecticut law, a claim for tortious interference with a business expectancy requires the plaintiff to establish "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Villages, LLC v. Longhi*, 187 Conn. App. 132, 146-47 (Conn. App. 2019).  "[N]ot every act that disturbs a contract or business expectancy is actionable." *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 124 A. 3d 847, 860 (Conn. 2015). "[F]or a plaintiff to successfully prosecute [an action for tortious interference] it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *Id.* "The plaintiff . . . must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." *Id.*

> [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means . . . . "[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself."

*Robert S. Weiss & Assocs., Inc. v. Wiederlight*, 546 A.2d 216, 223 (Conn. 1988).

"To set out a plausible tortious interference claim, a plaintiff must plead facts demonstrating 'that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit.'" *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 418-19 (D. Conn. 2018) (quoting *Dreamcatcher Software Dev., LLC v. Pop Warner Little Scholars, Inc.*, 298 F.Supp.2d 276, 287 (D. Conn. 2004)).

The Court finds that at this stage of the litigation, the Defendants' counterclaim for tortious interference is legally viable. In the counterclaim, the Defendants allege that the

Plaintiffs filed a lawsuit against them in bad faith because, at the time of filing, the Plaintiffs knew that Defendant Rao had fully complied with his contractual obligations. (Dkt. #62, Counterclaim ¶29, 43 and 44.)  The counterclaim alleges that, in filing the lawsuit, the Plaintiffs' intention was to interfere with Defendant AeroSimple's prospective contractual relationships. (Dkt. #62, Counterclaim ¶ 43 and 44.)  While not described in great detail, the counterclaim alleges that "on more than one occasion, [Plaintiffs] have directly or indirectly advised the entity seeking bids of the existence of the lawsuit" and such conduct subsequently "caused the entity's withdrawal of its acceptance of Aerosimple's bid." (Dkt. #62, Counterclaim ¶41-42.) Thus, the counterclaim sufficiently alleges (1) a business relationship between AeroSimple and prospective clients, (2) the Plaintiffs' intentional interference with that business relationship by advising the prospective clients of Plaintiffs' lawsuit against the Defendants, (3) an improper motive or means with respect to the alleged filing and use of the bad faith lawsuit, and (4) damages resulting from Plaintiffs' conduct. These allegations satisfy the minimal burden at this stage of litigation.[6]

---

[6] Plaintiffs' motion to Dismiss devoted one page to the tortious interference counterclaim and argued that the Defendants failed to plead sufficient facts under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Dkt. #64 at 6.)  Defendants' objection responded to this argument. (Dkt. 67 at 5-7.)  The Plaintiffs then filed a Reply Brief.  (Dkt. #68.) The Reply Brief did not simply argue that the Defendants failed to meet the standard under *Iqbal*.  Instead, the Reply Brief raised new arguments and cited new cases. The Reply Brief argued that because Plaintiffs' lawsuit against the Defendants is publicly filed and generally available to the public, it was not tortious for the Plaintiffs to advise Defendants' potential client of the existence of the lawsuit. (Dkt. #68 at 2.) The Reply Brief also argued that because the Plaintiffs and Defendants compete in the same market, Plaintiffs' actions should be viewed leniently as self-preservation privilege rather than tortious conduct. (Dkt. #68 at 4.)  Under Local Rule of Civil Procedure 7(d), a reply brief "must be strictly confined to a discussion of matters raised by the responsive brief." *See also Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 644 (D. Conn. 2015)(refusing to consider new arguments raised in a reply brief). Therefore, the Court will not consider the new arguments or cases raised in the Reply Brief. However, the Court notes that at least one case in a neighboring jurisdiction suggests that Defendants' counterclaim for tortious interference is potentially viable, despite the public availability of the complaint the Plaintiffs filed against the Defendants. See *Gillette Co. v. Provost*, 74 N.E.3d 275, 283 (2017).

Accordingly, Plaintiffs' Motion to Dismiss Counterclaim Two alleging tortious interference with prospective contractual relations and business expectancies is DENIED.

### B. Declaratory Judgment

Defendants seek a declaratory judgment that the NDA and Sections 3 and 5 of Mr. Rao's Employment Agreement are void and against public policy. (Dkt. #62, Counterclaim ¶48-49.) Plaintiffs argue that their breach of contract action already requires a determination as to whether the two agreements are enforceable and whether they have been breached, the Third Counterclaim should be dismissed. (Dkt. #64 at 7-9.) Defendants respond that they should not be prevented "from asserting a counterclaim simply because the Plaintiffs have asserter [sic] a claim involving the same subject matter." (Dkt. #67 at 9.)

"Even if a case presents an active controversy… the court has discretion to decline to exercise its jurisdiction under the Declaratory Judgment Act." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 260 (S.D.N.Y.), aff'd sub nom. *Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013).  In deciding whether to entertain a request for declaratory judgment, a district court must consider

> (1) whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether [such] a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy, and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023) (internal citations omitted). "

> On the first factor, courts will dismiss a declaratory judgment if it is the mirror image of a claim asserted in the complaint because "[t]he fact that a lawsuit has

been filed that will necessarily settle the issues for which the declaratory judgment
is sought suggests that the declaratory judgment will serve no useful purpose."

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 286 (E.D.N.Y. 2022)

(quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010).

"A counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of
the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would
not present a live controversy once the plaintiffs' claims have been resolved on the merits." *Nat'l
Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430
(S.D.N.Y. 2021); *see also Arista Recs. LLC v. Usenet.com., Inc.*, No. 07-CV-8822, 2008 WL
4974823, at *5 (S.D.N.Y. Nov. 24, 2008) (dismissing counterclaims seeking declaratory
judgment because "they mirror the issues raised in Plaintiffs' Complaint, constitute no
affirmative cause of action, and are duplicative of [Defendant's] affirmative defenses).

Here, the counterclaim seeking declaratory judgment mirrors Defendants' thirteenth
affirmative defense. (Dkt. #62 at 23, 29-31.)  The Confidentiality and Employment Agreements
are the subject of factual disputes regarding the timing of their signing and the terms of the
agreements. (Dkt. #62 Answer ¶8-9, 33-36.)  These are disputes that the Defendants
"respectfully refers [to] the trier of fact." (Dkt. #62, Answer ¶ 9, 33-36.) The counterclaim
seeking declaratory judgment ultimately raises the very same issues of contract interpretation and
enforceability that are already at issue in the initial complaint. Therefore, a declaratory judgment
is not appropriate at this stage of litigation. Accordingly, Plaintiffs' Motion to Dismiss the Third
Counterclaim is GRANTED.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Dismiss is GRANTED as to the First and Third Counterclaims and is DENIED as to the Second Counterclaim.

**IT IS SO ORDERED.**

**____/s/_____**
**Hon. Robert Richardson**
**United States Magistrate Judge**

**Dated this day in Hartford, Connecticut: September 7, 2023**