UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREY WALL SOFTWARE, LLC, *et al.*, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO. 3:22-CV-00203 (RAR) |
| AEROSIMPLE LLC, *et al.*, | : : : | |
| Defendants. | : | |

**RULING ON PENDING DISCOVERY REQUESTS**

Before the Court is a motion by the Defendants to have their expert Mr. Jeffrey Price ("Mr. Price") inspect the user interface of Plaintiffs' product ("the Veoci system"). Plaintiffs object to the motion and argue that the Veoci system is highly confidential. (Dkt. #127 at 2.) The Court held oral argument on July 2, 2025. For the reasons below, the Court takes Defendant's motion under advisement. In the meantime, the Court grants Plaintiffs leave to depose Mr. Price for the limited purpose of determining whether and to what extent Mr. Price's role as a consultant in the airline industry would potentially jeopardize Plaintiffs' trade secrets, if the Court allows Mr. Price to inspect the Veoci system.

**I.** **Factual Background**

Plaintiff Grey Wall Software, LLC ("Grey Wall") is the sole owner of Plaintiff Veoci Inc. ("Veoci"), which "is a software development company and service provider specializing in digitizing comprehensive aviation requirements and protocols for airports." (Dkt. #1 ¶ 1). According to the Complaint, Defendant Rao was previously employed by Plaintiffs from 2012 to 2018 and had great knowledge of Plaintiffs' business and products. See id. ¶¶ 6-12. Shortly after Mr. Rao's departure, however, Plaintiffs began noticing that a company named AeroSimple LLC ("AeroSimple") began winning contracts for which Plaintiffs had competed. Upon

1

realizing that Mr. Rao was AeroSimple's founder, Plaintiffs allegedly conducted an internal investigation and discovered that Mr. Rao had purchased the AeroSimple domain prior to leaving Plaintiffs' employment and likely had been eliciting similar business during that period.  Id. ¶ 48. Accordingly, Plaintiffs commenced this lawsuit.

## II. Procedural Background

In September of 2024, Plaintiffs moved for a protective order, arguing, *inter alia*, that Defendants' expert Mr. Price should not have access to Plaintiffs' Highly Confidential information.  (Dkt. #99 at 16).  In support of their motion, Plaintiffs claimed that Mr. Price is an industry consultant in the same market that is at issue in this case.  Id.  Plaintiffs asserted that Mr. Price provides services to airports as well as other product developers[1] selling to airports.  Id. Plaintiffs' motion for a protective order principally relied on Carrum Tech LLC v. FCA U.S. LLC, 2024 WL 464025 (E.D. Mich. Jan. 3, 2024), to argue that Mr. Price should be disqualified from reviewing the Veoci system and any other Highly Confidential information.

Defendants objected to Plaintiffs' motion for a protective order, countering that Mr. Price should be allowed to view the Veoci system.  (Dkt. #101 at 12).  As their objection made clear, Defendants wanted Mr. Price "to view and use the version of the Veoci system as it existed when Mr. Rao was last employed[.]"  Id.  To that end, Defendants asserted that "[t]here is no authority to allow an adversary to block the engagement by an adverse party of consultants and experts prior to their actual disclosure[.]"  Id.  However, in making this assertion, Defendants made no

---

[1] Defendants have not yet clarified whether Mr. Price provides consulting services to other product developers in the airline industry.  See Dkt. #101 at 13 ("[T]here is *nothing in his resume* to indicate [Mr. Price] provides consulting services to 'product developers selling to airport facilities.'  *Yet even were Mr. Price to provide some kind of consulting to 'product developers selling to airport facilities*,' not only will he not have access to Plaintiffs' source code, but he will be subject to the restrictions and sanctions in the Protective Order that Plaintiffs insist be entered.")  (emphasis added) (internal citations omitted).

attempt to discuss or distinguish the very case that Plaintiffs relied on to argue that Mr. Price could and should be precluded from inspecting the Veoci system. Therefore, in their reply brief, Plaintiffs argued that "[i]t is Defendants' position with respect to Mr. Price… that is 'unprecedented,' not Plaintiffs'. Defendants do no discuss or distinguish Carrum Tech LLC v. FCA U.S. LLC, where the court granted a protective order prohibiting disclosure of trade secrets to a proposed expert." (Dkt. #102 at 10) (internal citations omitted).

On March 20, 2025, the Court granted in part and denied in part Plaintiffs' motion for a protective order. (Dkt. #108-1). Importantly, based on concerns that Plaintiffs raised in their motion, the Court found "it inappropriate for Defendants to provide Mr. Price any of Plaintiffs' material that has been designated as 'Highly Confidential' at this juncture." Id. at 8.

Thereafter, on March 27, 2025, Defendants timely moved for reconsideration of the Court's ruling. (Dkt. #113). Yet, Defendants' motion for reconsideration addressed *only* the portion of the Court's ruling that related to Mr. Rao's potential review of Highly Confidential materials. Notably, the motion for reconsideration did *not* address the Court's ruling denying Mr. Price access to Plaintiffs' Highly Confidential Information, which included the Veoci system. See generally id.

On April 25, 2025, the parties submitted through Special Master James T. Shearin ("Special Master Shearin") a status report, which noted that Defendants were seeking permission to allow Mr. Price to view Plaintiffs' system in the same manner as a customer or user of the system.[2] (Dkt. #124 at 2). Given this dispute, Special Master Shearin suggested that the parties

---

[2] The status report conveyed that, like before, while Plaintiffs were arguing that the Veoci system was not only highly confidential but also trade secret protected, Defendants were continuing to argue that the Veoci system is neither. (Dkt. #124 at 2-3).

file briefs focused "*solely* on whether or not the relevant documents and access [Plaintiffs'] system as would a user are entitled to Highly Confidential level protection under the Protective Order." Id. at 3 (emphasis added).

In response to Special Master Shearin's suggestion, the Court allowed briefing on this issue. (Dkt. #126). The parties then timely briefed their positions. (Dkt. #127 and 131). Defendants' brief contained an affidavit from Mr. Price ("Price Affidavit"). The Price Affidavit responded to some of the concerns that Plaintiffs raised about Mr. Price in their motion for a protective order dated September 10, 2024. (Dkt. #131-1.) The Court held oral argument on the matter to fully ascertain the parties' positions and rationale behind their submissions.

The Court construes Defendants' general position as a motion for reconsideration, which the Court addresses below.

### III.     Legal Standard: Motion for Reconsideration

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and internal quotations omitted). As such, the standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); accord Commerzbank AG v. U.S. Bank, N.A., 100 F.4th 362, 377 (2d Cir. 2024). Moreover, the Second Circuit has made clear that "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue

4

already decided." Shrader, 70 F.3d at 257 (2d Cir. 1995); accord Yu v. Knighted, LLC, 811 F. App'x 55, 57 (2d Cir. 2020) (summary order).

IV. **Discussion**

To begin, the Court construes Defendants' current request as a motion for reconsideration because, instead of focusing on the limited issue raised by Special Master Shearin, Defendants are essentially asking the Court to again reconsider the order from March 20, 2025. Despite the limited nature of Special Master Shearin's suggestion, Defendants' brief contains an affidavit from Mr. Price which responds to arguments that Plaintiffs made about Mr. Price in their briefs dated September 10, 2024, and November 6, 2024.[3] Additionally, although Defendants did not attempt to distinguish the Carrum Tech decision in their objection to Plaintiffs' motion for a protective order, Defendants' current brief attempts to distinguish Carrum Tech. (Dkt. 131 at 4-5.) Put simply, these issues far exceed the scope of the Special Master's suggestion. Instead of focusing on the *sole* issue of whether the Veoci system falls within the definition of Highly Confidential information, Defendants contest more broadly that Mr. Price should be able to review Plaintiffs' Highly Confidential information. (Dkt. #131 at 6)(arguing that the Court "should issue an order permitting Mr. Price to review material designated as 'Highly Confidential' other than source code.")

Construing Defendants' request as one for reconsideration, the Court has several concerns. For one, Defendants are essentially asking the Court to reconsider its order from March 20, 2025, even though the deadline for requesting reconsideration has long-since

---

[3] Defendants have not explained why they *chose* not to include an affidavit from Mr. Price in their initial objection to Plaintiff's motion for protective order. The affidavit does not constitute "new evidence."

5

expired.[4] See D. CONN. L. CIV. R. 7(c)(1) (motions for reconsideration "shall be filed and served within seven days of the filing of the decision or order from which such relief is sought"). Second, even if Defendants had timely requested reconsideration on this issue, the standard is strict. As noted earlier, the moving party "must demonstrate that newly discovered facts exist that require consideration, that there has been an intervening change in the law, or that the court has overlooked and thus failed to consider an aspect of the law *presented by the moving party* which, if left unredressed, would result in a clear error or cause manifest injustice." Morien v. Munich Reinsurance Am., Inc., 270 F.R.D. 65, 69 (D. Conn. 2010) (emphasis added) (citations and internal quotations omitted). In short, Defendants have not indicated how this strict standard has been met.

Regarding the *sole* issue that Special Master Shearin asked the parties to brief, the Court finds that Plaintiffs have sufficiently established that the Veoci system may be properly designated as Highly Confidential. In support of this finding, the Court points to the restrictions which Plaintiffs place on clients who are given "user access" to the Veoci system. (Dkt. #127 at 2-3.) Additionally, the Court notes that it previously ruled that Mr. Price may not have access to Highly Confidential information and that ruling specifically took into consideration Mr. Price's potential access to the Veoci system – indeed, the parties originally argued about this exact issue in their initial briefs. See generally Dkt. #99, 101 and 102.

Although the Price Affidavit does not constitute new evidence or information that the Defendants could not have obtained or produced to the court in October of 2024, the Price Affidavit raises doubts about Plaintiffs' concerns about Mr. Price. When asked about the Price

---

[4] As noted earlier, Defendants filed a timely request for reconsideration, but it failed to mention or discuss the very issue that Defendants are now asking the Court to reconsider four months later.

Affidavit, Plaintiffs' counsel indicated that he still has concerns even after reading the Affidavit and would like permission to conduct a limited *voir dire* of Mr. Price, if the Court is entertaining the possibility of reconsidering its prior ruling. Defense counsel objected to this request. However, because the Court would like to make sure it provides adequate protection to Plaintiffs' Highly Confidential information while also determining if, in fact, Carrum Tech really applies to Mr. Price's situation, the Court **GRANTS** Plaintiffs' request to conduct a limited *voir dire* of Mr. Price.

### V.     Conclusion

For the reasons above, the Court **GRANTS** Plaintiffs leave to depose Mr. Price for the very limited purpose of determining whether and to what extent Mr. Price's role as a consultant in the airline industry would jeopardize Plaintiffs' trade secrets, if the Court decides to allow Mr. Price to inspect the Veoci system. In the meantime, the Court takes Defendants' request to have Mr. Price inspect the Veoci system under advisement.

The parties shall, **within seven days of Mr. Price's deposition**, submit a status report that **(1)** details the extent to which the parties have been able to confer with Special Master Shearin and resolve the issue of Mr. Price's potential access to the Veoci system, and **(2)** clarifies the parties' current positions as to whether Mr. Price should or should not have access to the Veoci system, in light of Mr. Price's testimony.

Dated this 28th day of July, 2025 at Hartford, Connecticut.

                                                              _____/s/_____
                                                              Robert A. Richardson
                                                              United States Magistrate Judge